IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:09-cr-00013-MR-WCM-7

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> DORIS DENISE FOSTER, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 959].

**I.     BACKGROUND**

Between 2007 and 2009, the Defendant Doris Foster and her husband, Kenneth Foster, participated in a large-scale drug-trafficking conspiracy that operated in Buncombe County, North Carolina. [Doc. 551: PSR at ¶¶ 6-14]. A group of Mexican nationals living in Black Mountain, North Carolina, obtained large quantities of powder cocaine from sources in Atlanta, Georgia, and sold the cocaine to local dealers who converted the cocaine powder into crack cocaine before distributing it. [Id. at ¶¶ 6-7].

Kenneth Foster was the primary customer of these dealers, buying kilogram quantities of powder cocaine that he cooked into crack cocaine. [Id. at ¶¶ 7-8, 10-11, 13-14]. The Defendant worked with her husband, buying kilogram quantities of powder cocaine on at least three occasions between December 2008 and January 2009, when police were intercepting Kenneth Foster's wire communications. [Id. at ¶¶ 8, 10-11]. When police searched the Fosters' residence, they found 156 grams of crack cocaine and 538 grams of powder cocaine. [Id. at ¶ 14]. The Defendant was present when Kenneth Foster cooked crack cocaine and was "fully cognizant" that the powder cocaine she and Kenneth Foster bought would be converted into crack cocaine. [Id. at ¶¶ 13-14]. Kenneth Foster converted the powder cocaine into crack cocaine at a conversion rate of 22 grams of crack cocaine for every 28 grams (1 ounce) of powder cocaine. [Id. at ¶ 14].

A federal grand jury indicted the Defendant, Kenneth Foster, and thirteen others, charging them with conspiracy to possess with intent to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. § 846; and with using a communication facility to facilitate the conspiracy offense, in violation of 21 U.S.C. § 843(b). [Doc. 12: Indictment at 1-3]. The Defendant proceeded to trial, and a jury found her guilty of the drug-

trafficking-conspiracy offense. [Doc. 506: Jury Verdict]. The jury also found that at least 50 grams of crack cocaine were attributable to the Defendant. [Id.].

The probation office prepared a Presentence Report and calculated a base offense level of 36 based on the Defendant's responsibility for a total of 2.9 kilograms of crack cocaine. [Doc. 551: PSR at ¶ 20]. In arriving at this drug-quantity calculation, the probation officer converted the powder cocaine into crack cocaine at 776 grams of crack cocaine for every kilogram of powder cocaine. [Id. at ¶ 14]. Based on a total offense level of 36 and a criminal history category (CHC) of VI, the Sentencing Guidelines advised a sentence of between 324 and 405 months of imprisonment. [Id. at ¶ 76].

The Defendant objected to the drug-quantity calculation, arguing that the Court should not convert the powder cocaine for which she was responsible into crack cocaine. [Id. at 20]. At sentencing, the Court overruled the Defendant's objection, finding that the evidence at trial well supported the conclusion that all the powder cocaine bought by the Defendant and Kenneth Foster was converted into crack cocaine and that the Defendant knew that it was purchased for that purpose. [Doc. 575: Sent. Tr. at 21].

3

The Court adopted the PSR as accurate and sentenced the Defendant to 292 months in prison, varying downward the equivalent of one Criminal History Category under the Sentencing Guidelines. [Doc. 563: Judgment at 2; Doc. 564: Statement of Reasons ("SOR") at 1]. The Court explained that it granted this downward variance because the Defendant had challenged the legitimacy of one of her prior convictions and that the records related to that conviction had been destroyed, which caused the Court some concern as to its accuracy. [Doc. 575: Sent. Tr. at 54-55; Doc. 564: SOR at 3]. The Court also explained that a downward variance was warranted to avoid unwarranted sentencing disparities, noting that Kenneth Foster was a leader within the conspiracy and the Defendant should receive a sentence significantly lower than his. [Doc. 575: Sent. Tr. at 55].

The Defendant appealed her sentence, arguing on appeal that "the district court erred in calculating the quantity of crack attributable to her under the advisory Guidelines." [Doc. 602: Fourth Cir. Op. at 2]. The Fourth Circuit affirmed this Court's judgment, holding that "the district court did not err in calculating the quantity of crack attributable to Foster under the Guidelines." [Id. at 3-4].

4

Case 1:09-cr-00013-MR-WCM   Document 968   Filed 11/12/20   Page 4 of 12

In February 2016, this Court granted the Defendant's motion for reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 782 reduced the Defendant's sentence to 262 months' imprisonment in prison, the bottom of the range advised by the Sentencing Guidelines. [Doc. 815: Order at 1].

The Defendant now seeks a further reduction of her sentence pursuant to the First Step Act to a sentence of time served. [Doc. 959]. The Government agrees that the Defendant is eligible for a reduction in her custodial sentence to 235 months and a reduction in her supervised release term to four years. The Government objects, however, to any further reduction in the Defendant's sentence. [Doc. 966].

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage.

5

Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. 115-391. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed."

The Defendant is eligible for relief under the First Step Act because she was convicted of a "covered offense" under Section 404(a)'s definition. See Gravatt, 953 F.3d at 263-64. Her offense was committed before August 3, 2010; she was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Further, the Defendant's sentence has not been previously reduced by the operation of Sections 2

6

or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Having determined that the Defendant is eligible for relief under the First Step Act, the Court must next determine whether in its discretion any such relief should be afforded and, if so, to what extent. See United States v. Wirsing, 943 F.3d 175, 180 (4th Cir. 2020); First Step Act § 404(b), 132 tat at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

The Court begins with a calculation of the appropriate Guidelines range. Here, the Defendant contends that, using the Converted Drug Weight conversions in U.S.S.G. § 2D1.1 for cocaine powder and cocaine base, her total offense level should be 30.[1] The Defendant contends that, when combined with a CHC of VI, the result is a now-applicable Guidelines range of 168 to 210 months. [Doc. 959 at 10]. The Defendant, however, misconstrues how the drug quantities were calculated in her case. The

---

[1] This calculation is based on the following conversion formula: (3,538.4 grams of powder cocaine x 200 = 707,680 grams = 707.68 kilograms) + (156.6 grams of crack cocaine x 3571 = 559,218.6 grams = 559.22 kilograms) = 1,266.9 kilograms of converted drug weight. [See Doc. 959 at 10 (citing U.S.S.G. § 2D1.1(c)(5); U.S.S.G. § 2D1.1 cmt. n.8(D) (conversion table))].

conspiracy in which the Defendant participated involved both crack cocaine and cocaine powder. The Defendant was charged with and convicted of participating in a distribution conspiracy concerning crack cocaine. Therefore, in calculating the applicable drug quantity, the Court did not determine the "marijuana equivalencies" (now "converted drug weight) under § 2D1.1.[2] Rather, the Court relied on the evidence presented at trial that *all* the powder cocaine purchased (and reasonably foreseeable by the Defendant) was being converted to crack cocaine and that Kenneth Foster converted the powder cocaine into crack cocaine at a conversion rate of 22 grams of crack cocaine for every 28 grams of powder cocaine. Using that conversion ratio, the Court calculated that the Defendant was responsible for a total of 2,902.43 grams of crack cocaine.

In her motion, the Defendant argues that this drug quantity calculation is erroneous. [Doc. 959 at 4-5]. The Defendant raised this challenge at sentencing, and the Court overruled her objection. The Defendant then raised this issue on appeal, and the Fourth Circuit rejected her argument and affirmed the judgment. The record supports the Court's earlier findings

---

[2] Section 2D1.1 was amended after the enactment of the Fair Sentencing Act of 2010 to replace "marijuana equivalency" with the current "converted drug weight" terminology. See U.S.S.G. Supp. to App. C, Amend. 808, at 179-87 (2018).

regarding the amount of crack cocaine involved in the conspiracy and the calculation used to determine the quantity for which the Defendant was responsible.  Because any lower drug-quantity finding would be inconsistent with this Court's earlier findings, the Court will adhere to its earlier drug calculation.  See United States v. Peters, 843 F.3d 572, 578 (4th Cir. 2016) (holding that, in considering a motion for reduction of sentence under § 3582(c)(2), court may make additional findings about drug quantities but that those findings "cannot contradict earlier ones and must be supported by the record").  Using this drug calculation, the drug amount for which the Defendant is responsible still results in a total offense level of 34 under the revised Guidelines.  Thus, the Defendant's applicable Guideline range remains 262 to 327 months' imprisonment, just as it was when the Court considered the Defendant's Motion for Reduction of Sentence pursuant to Amendment 782. [Doc. 815].

Because this Court's previous assessment of the § 3553(a) factors led this Court to vary downward by one level, the Court finds that a one-level reduction is warranted from the same reasons that were articulated at the time this Court originally sentenced the Defendant.  A sentence of 235

months' imprisonment would be the low-end of the range advised by the Guidelines with a one-level reduction.[3]

The Defendant contends that her positive conduct within the BOP and her efforts at post-sentencing rehabilitation warrant an even further reduction of her sentence. The Fourth Circuit has held that, in considering whether to grant First Step relief, a court may consider any mitigating evidence presented by the Defendant, including any post-sentencing rehabilitation. United States v. Chambers, 956 F.3d 667, 675 (4th Cir. 2020), reh'g denied (July 8, 2020).

Here, the Defendant has incurred only a single disciplinary infraction in her entire time at BOP. [See Doc. 961]. Additionally, while incarcerated she has completed an impressive number of work assignments and educational programs, including earning her GED. [See id.]. While the Defendant's conduct while in BOP is laudable, this factor does not outweigh the seriousness of her offense conduct or the other relevant § 3553(a) factors that weigh in favor of her continued incarceration. The Defendant was responsible for distributing a large amount of crack cocaine and was part of a drug-trafficking conspiracy that saturated the

---

[3] The result is the same whether the downward variance is by one offense level or one criminal history category.

communities of Buncombe County with deadly narcotics. The Defendant's criminal history placed her in one of the two highest criminal-history categories. The Court finds that the need to deter others and the need to protect the public both support a sentence within the one-level downward-variance range that this Court originally applied. Accordingly, in the exercise of its discretion, the Court grants the Defendant's request for relief under the First Step Act and reduces her term of imprisonment to a term of 235 months and her term of supervised release to a term of four years. The Defendant's request for the imposition of a time served sentence is denied.

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Reduced Sentence under The First Step Act of 2018 [Doc. 959] is **GRANTED IN PART** and **DENIED IN PART**, and the Defendant's sentence is hereby reduced to **235 months' imprisonment** and the term of supervised release is hereby reduced to a term of **four (4) years**. All other terms and conditions of the Defendant's Judgment [Doc. 563] shall remain in full force and effect.

The Clerk is respectfully directed to prepare an Amended Judgment in accordance with this Order.

The Clerk is further directed to provide copies of this Order to the Defendant, counsel for the Defendant, the United States Attorney, the United States Marshals Service, the United States Probation Office, and the United States Bureau of Prisons.

**IT IS SO ORDERED.**

Martin Reidinger
Chief United States District Judge

Signed: November 11, 2020